### JACOB ANDERSON V. CINCINNATI TRACTION CO.

1. Upon a motion for a new trial, the facts are to be taken most strongly against the mover.
2. Where, in an action against a street railroad company for negligence whereby plaintiff's wagon, while traveling in defendant's track, was run into from behind by a car, it appears from the evidence that defendant's servants in charge of the car saw plaintiff's wagon in the track in ample time to have prevented the collision by the application of the ordinary means of stopping the car, the fact that the collision occurred raises a presumption of negligence on the part of the defendant.
3. In an action against a street railroad company for the negligence of its servants in charge of a car whereby plaintiff's wagon was run into behind, where the evidence shows that at the time plaintiff turned into the track, he was thirty to fifty feet ahead of the car; that the motorman saw the plaintiff turning into the track; that the car was traveling seven or eight miles an hour and plaintiff four or five; that a car going seven or eight miles an hour can be stopped by the ordinary appliances within thirty or forty feet, it is mathematically demonstrable that, by the exercise of ordinary care, the car could have been stopped or controlled in time to prevent a collision and a verdict in favor of the defendant should be set aside as not being supported by the evidence.

HOSEA, J.

Motion for new trial.

Upon a motion for a new trial—as upon a motion for non-suit—the facts are to be taken most strongly against the mover. This is the basis of the "scintilla" rule, and both rest upon the elementary doctrine that all things are presumed in favor of the correctness and regularity of judicial proceedings—*omnia praesumuntur rite esse acta, donec probetur in contrarium.*

The main outlines of conceded fact in this case are as follows:

The plaintiff, driving a spring wagon with a top and curtained sides, on a straight and practically level street, in full daylight, was run into from behind by a street car, his wagon dragged forward about. fifty feet, overturned and smashed, his horse thrown down, and himself narrowly escaped with his life. Plaintiff's wagon was in full view and seen by those in charge of the car when seven hundred or more feet away, traveling between the track and the curb. There was also a milk wagon beyond plaintiff, coming toward him in the tracks. The milk wagon turned aside across plaintiff's path ahead and stopped at the curb. The distance from the outer rail of the track to the curb being only a trifle over eleven feet, plaintiff, in order to pass by the milk wagon, turned partially into the track, and while there, was struck by the street car.

To sustain the burden of proof on his part, plaintiff showed that before turning into the track, he looked back and no car was in sight; and that he was in the track a half minute before the collision occurred, and heard no. signals. If this statement be true, and the car was traveling at only eight miles per hour (as claimed by defendant), then the car was about two hundred and forty feet behind plaintiff when he came upon the track; and, as it was shown that a car going at eight miles per hour can be stopped by the ordinary appliances in thirty or forty feet, the presumption of negligence was against the defendant, for it thus clearly apppeared that there was ample time and opportunity to stop the car and avoid the collision.

The burden of overcoming the presumption being thus cast upon the defendant, the question—to put it most

strongly in its favor, and therefore assuming the position of plaintiff upon the track showed contributory negligence—was whether the defendant used proper care to avoid the accident?

The motorman and the conductor of the car both testified that the car was traveling at a speed of seven to eight miles per hour; that plaintiff's wagon was traveling at a speed of four or five miles per hour; that when plaintiff turned into the track, he was thirty to fifty feet ahead of the car; that the motorman instantly applied the reversing apparatus; that the car, its appliances and the track were in good order. The motorman also testified that a car going at eight miles an hour could be stopped within thirty to forty feet.

Taking from this testimony the factors most favorable to the defendant—car speed eight miles per hour; wagon speed four miles per hour—what distance must the car have traveled to overtake the wagon fifty feet ahead?

While the car was traversing the fifty feet, the wagon was traveling half as far, and when the car reached the spot where the wagon had been, the latter was still twenty-five feet ahead, and so on until—the speeds remaining constant—the car traveled to overtake the wagon about ninety-eight feet. If the initial distance apart be taken at only thirty feet, the car must have traveled about sixty feet to overtake the wagon—speeds being constant.

But the speeds were not constant. If the reverse was applied, as claimed, a reduction of car speed would immediately begin; and it is obvious that if reduced to one-half before actual contact, no contact could possibly occur. If a car traveling at eight miles per hour can be stopped in thirty to forty feet, its speed could certainly be reduced to four miles per hour in twenty to twenty-five feet; so that here was ample space and opportunity, not only to check the speed sufficiently to avoid collision, but to bring the car to a dead stop, if necessary, long before contact could possibly have occurred. If, as testified by the motorman of the car, Anderson's horse was trotting and was making six miles per hour, then the car must have traveled one hun-

dred and eight-four feet to overtake the wagon, starting at fifty feet apart.

Upon the facts claimed by the conductor and motorman of the car, therefore, it is demonstrable that the reverse gear could not have been applied when they testify it was applied, and when they admit should have been applied. But, in connection with further facts shown by defendant, it is clear, beyond a reasonable doubt, that it was not applied, if at all, until about the moment of the collision, or after.

(1) The conductor of the car says he knows when the reverse was applied, because the effect was so sudden that the weight of his body caused him to sway forward; and that this occurred when the car and wagon were thirty or forty feet apart.

Yet Hall, the cement man, a disinterested witness for the defendant, says that at this time he was standing on the rear platform of the car talking to the conductor of the car about other matters, and that the first thing that attracted his attention was the collision itself; and that he did not notice any indication of the reverse being put on. The testimony of McClure, the only other witness for defendant, tends to confirm Hall's version.

(2) Both conductor and motorman of the car agree that by and after the collision, the wagon was shoved or dragged from a point thirty feet short of the milk wagon to about twenty feet beyond it before the car came to a stop. Add these figures to those given before, and we have a minimum of one hundred and ten feet, and a maximum of two hundred and thirty-four feet, as the distance traversed by the car after the application of the reverse, as claimed, to the point of stoppage; and to these must be added, the length of the car, thirty feet.

The conclusion is irresistible, that the reverse, if applied at all, was not applied until about at the moment of the collision, and this means gross and culpable negligence on the part of the defendant.

A verdict so palpably against the evidence, can not be permitted to stand. The evidence is not sufficient to support the verdict, and the latter must be set aside.

Verdict set aside, and new trial ordered.

*Aaron A. Ferris,* for plaintiff.
*Kittredge & Wilby,* for defendant.